UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

ZELMA DUDLEY,

               Plaintiff,

-against-

HANZON HOMECARE SERVICES, INC. et al.,

               Defendants.

------------------------------------------------------------X

**Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment**

Civil Action No.: 15-cv-08821

RECEIVED
SDNY DOCKET UNIT
2017 FEB -7  AM 11:34

## Defendant Melsada Morrison's Memorandum of Law In Opposition to Plaintiff's Motion for Summary Judgment[1]

Defendant Melsada Morrison ("Morrison") submits this memorandum of law in opposition to Plaintiff's motion for summary judgment.[2]

### PRELIMINARY STATEMENT

Plaintiff, who alleges violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), has not met her burden of showing an absence of genuine issues of material fact in this case. There are several genuine issues of material fact that preclude a grant of summary judgment in Plaintiff's favor:

First, there is a genuine issue of material fact as to whether Plaintiff is owed any unpaid wages. Resolving that issue depends on a determination of when Plaintiff began performing work for Hanzon and how many hours she worked during each week of her employment – both of which are disputed.

---

[1]     This document was prepared with the assistance of the New York Legal Assistance Group Legal Clinic for Pro Se Litigants in the SDNY.

[2]     The court entered a default judgment against Hanzon because it did not have counsel but held that damages if any would be determined in connection with the claims against Morrison.

Second, there is a genuine issue of material fact as to whether Morrison (as opposed to Hanzon) was Plaintiff's employer.

Third, there is a genuine issue of material fact as to whether, in the event that it is proved that Plaintiff is owed unpaid wages, she is entitled to liquidated damages under either the FLSA or the NYLL. Resolving that issue requires a determination about whether Morrison acted with subjective good faith effort and had an objectively reasonable basis to believe that Hanzon complied with the law. These issues are disputed.

Fourth, there is a genuine issue of material fact as to whether Morrison is liable for penalties for failure to provide notices to Plaintiff concerning her wages that were legally adequate under the NYLL. Resolving that issue requires a determination about the affirmative defenses of whether Plaintiff was timely paid all wages owed and whether Morrison reasonably believed the notices in question were legally adequate, both of which are disputed.

## STATEMENT OF FACTS[3]

Morrison is the owner and president of Hanzon, a company that provides aides to care for elderly individuals. Hanzon never had more than 15 employees at a given time and usually had fewer. Morrison has a high school education and she frequently worked alongside Hanzon's aides. Def.'s 56.1 Opp. ¶ 2. Morrison took affirmative steps to confirm that Hanzon's pay practices complied with the FLSA and NYLL. She asked her son, a Hanzon employee, to call the New York State Labor Board to understand the steps Hanzon needed to take to comply with

---

[3] Defendant relies on the facts outlined in the attached documents: Defendant's Response to Plaintiff's Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 in Opposition to Plaintiff's Motion for Summary Judgment ("Def.'s 56.1 Opp."); Melsada Morrison's Declaration in Opposition to Plaintiff's Motion for Summary Judgment ("Morrison Decl.") and the attached exhibits; and other facts contained in the record.

the law. In addition, Hanzon used payroll forms and notices from the New York State Department of Labor's website, submitted to annual audits by the New York State Department of Labor (which entailed a review by the auditors of Hanzon's documents, including bank account statements and quarterly payroll statements), and employed a well-regarded professional payroll company (ADP) to manage the payroll. She reasonably believed that Hanzon's practices for paying its employees complied with governing law, and that the wage notices and pay stubs provided to employees complied with governing law. She did not believe that Plaintiff's pay stubs or wage notices needed to include an hourly pay rate or overtime pay rate, or that Plaintiff's pay stubs needed to list the hours worked because Plaintiff had agree to a daily pay rate. She expected that the NY Departent of Labor auditors would have raised concerns and that ADP would have notified her if Hanzon's pay stubs routinely failed to include legally required information. Def.'s 56.1 Opp. ¶¶ 41-44.

Plaintiff signed a wage contract with Hanzon on August 3, 2013. However, Morrison did not have any placements for her then, and Plaintiff did not begin performing work for Hanzon until late November 2013. *Id.* ¶ 2. At that time, Plaintiff began caring for an elderly woman who did not require 24-hour care but whose family wanted her to have a live-in companion; the client was mostly self-sufficient and did not need assistance using the bathroom or being put to bed. *Id.* ¶¶ 3, 7, 14-15. Her prior aides were terminated in November 2013. Morison tried placing two other aides with the client in early November but the client did not like them. Then she asked Plaintiff to work with the client. Plaintiff's pay for approximately the first four weeks she performed work for Hanzon was in cash because Morrison was not sure the client would like her. When the client approved of Plaintiff, she was entered into the ADP payroll book with a start date of December 23, 2013. Plaintiff received her first pay check and pay stub on January

7, 2014. *Id.* ¶ 2. That pay stub and all subsequent ones did not indicate an hourly pay rate or overtime pay rate; Morrison did not believe that information was required because Plaintiff had agreed to a daily rate of pay. Morrison also reasonably believed that the pay notice and pay stubs were legally adequate because the New York State Department of Labor auditors never raised any concerns and because ADP had never informed her of any problems with Hanzon's pay stubs. *Id.* ¶¶ 41-44. Plaintiff performed work for Hanzon caring for the same elderly woman until Plaintiff was terminated for cause (neglect and verbal abuse of the client) on May 28, 2015. *Id.* ¶¶ 2, 5.

During her time working with this client, Plaintiff never worked more than five days out of any seven-day work week.[4] During most periods that she was on duty, she worked five days out of seven, but during some weeks, Plaintiff worked only four days out of seven. *Id.* ¶¶ 6, 18-20, 22, 40. Another aide, Donna Simpson, cared for the client on the days that Plaintiff was not on duty. *Id.* ¶¶ 6, 40. An aide named Patricia Lewis later took over sharing care of the client with Ms. Simpson. *Id.*

Plaintiff's, Simpson's and Lewis' duties included preparing meals for both themselves and the client, helping her shower and dress, washing the client's clothing, and accompanying her on walks or while watching television. *Id.* ¶ 11. They did not have to do general cleaning, because a housekeeper came in once every two weeks. *Id.*

Plaintiff was expected to arrive at work at 9 am on Monday morning and left again at 9

---

[4] Plaintiff received holiday pay, and bonus pay four times throughout the course of her employment, each time in 2014. This is recorded as an extra day when inputted on the payroll system. As a result there were four weeks in 2014 where the payroll service lists Plaintiff as having worked six days in a week, but she actually only worked five days. Def.'s 56.1 Opp. ¶ 22.

am on Saturday morning. *Id.* ¶¶ 6, 8. On nights she stayed with the client overnight, Plaintiff slept on a pull-out sofa bed in a separate room. *Id.* ¶ 7. The client typically slept for at least 12.5 hours per night when she did not have to undergo dialysis the next morning (from 9 pm until 9:30 or 10:30 am) and 11 hours per night on nights she did have dialysis the next morning (from 9 pm until 8 am). *Id.* The client almost never woke up in the middle of the night for assistance; if she awoke, she was capable of using the restroom on her own. *Id.* ¶¶ 16, 17, 23. Until this lawsuit was filed, Morrison never received complaints from Plaintiff that Plaintiff was not sleeping during the night or that Plaintiff was not receiving appropriate breaks. *Id.*

On Wednesdays, the client's daughter took her for outings that would last at least three hours; Plaintiff was not required or expected to attend, although she was free to do so if she chose. *Id.* ¶¶ 10, 20. If she chose to attend, Plaintiff had no work related responsibilities, and if she stayed at home she was free to spend the time as she wished. *Id.* On Fridays, Morrison took the client to the hair salon; the client was out of the house for 3 hours and Plaintiff was not expected to attend and had no work-related responsibilities during that time. *Id.*

Starting in April 2014, the client began undergoing weekly dialysis, including on Tuesdays and Thursdays (days that Plaintiff worked). Morrison took the client to and from dialysis. On days the client had dialysis, she was typically out of the house for seven hours during the day (10 am to 5 pm), and never for less than 6.5 (they never returned before 4:30 pm). Plaintiff was not required or expected to accompany her. On about two occasions during the entirety of her employment Plaintiff rode in the car to the dialysis center, but did not stay at the dialysis center. *Id.* ¶¶ 10, 25, 26. On those occasions Morrison dropped Plaintiff off at a nearby bus stop. There was nowhere at the dialysis center for a companion to wait. *Id.*

In light of the client's weekly schedule, between late November 2013 and the end of

March of 2014, Plaintiff never worked more than 40 hours per week.[5] *Id.* ¶¶ 20, 24.

From April 2014 until the time Plaintiff was terminated in May 2015, Plaintiff did not work more than 33 hours per week. *Id.* ¶¶ 27, 28, 45.[6]

Plaintiff would be entitled to overtime wages only if she worked in excess of 40 per week. Because, as set forth above, she did not, she is not entitled to overtime wages.

Plaintiff was paid $130 per day for every day that she worked. *Id.* ¶ 5. Prior to April 2014, when she worked 40 hours per week, her regular rate of pay was $16.25 ($130 per day x 5 days/40 hours worked). *Id.* ¶¶ 21, 24. Thereafter, when she worked 33 hours per week, her regular rate of pay was $19.69 ($130 per day x 5days/33 hours worked). *Id.* ¶¶ 27, 28. The highest relevant minimum wage during the time Plaintiff performed work for Hanzon was $8.75 per hour, and so her regular rate of pay was at all times above the minimum wage. In fact, her compensation was sufficiently in excess of what she would have been paid at the minimum wage that she was not entitled to any spread of hours wages under the NYLL.[7] *Id.* ¶ 45.

---

[5] She worked as follows: Mondays, 10 hours (9 am to 9 pm less one hour for lunch and one hour for dinner); Tuesdays, 8.5 hours (10:30 am to 9 pm, less one hour for lunch and one hour for dinner); Wednesdays, 6.5 hours (10:30 am to 9 pm, less three hours while the client was out with her family and one hour for dinner); Thursdays, 8.5 hours (10:30 am to 9 pm, less one hour for lunch and one hour for dinner); Fridays, 6.5 hours (10:30 am to 9 pm, less three hours while the client was at the hair salon and one hour for dinner). *Id.* ¶¶ 10, 20.

[6] She worked as follows: Mondays, 10 hours (9 am to 9 pm less one hour for lunch and one hour for dinner); Tuesdays, 5 hours (8 am to 9 pm, less seven hours for dialysis and one hour for dinner); Wednesdays, 6.5 hours (10:30 am to 9 pm, less three hours while the client was out with her family and one hour for dinner); Thursdays, 5 hours (8 am to 9 pm, less seven hours for dialysis and one hour for dinner); Fridays, 6.5 hours (10:30 am to 9 pm, less three hours while the client was at the hair salon and one hour for dinner). *Id.*

[7] Spread of hours wages are an extra hour of pay at the minimum wage rate that must be paid to certain employees when the interval between the beginning and end of an employee's workday is greater than 10 hours. Spread of hours is required only if the total wages paid to the employee are less than the total due for (1) all hours at the minimum wage plus (2) one additional hour at the minimum wage. Based on the hours Plaintiff worked, as shown by

These calculations demonstrate that, contrary to Plaintiff's claims, she is not owed any unpaid wages.

## Argument

Summary judgment is not appropriate when the moving party has not met her burden of demonstrating that there is an "absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The moving party (in this case Plainifff) has no obligation to disprove issues on which the nonmoving party (in this case Morrision) bears the burden of proof. *Id.* However, where, as here, the nonmoving party has pointed to specific facts showing that there are genuine issues for trial, it is not appropriate for the court to grant summary judgment.

### I. Plaintiff Has Not Shown There Is an Absence of a Genuine Issue of Material Fact as to Whether She Is Owed Any Unpaid Wages Under the FLSA or NYLL.

Plaintiff asserts that it is undisputed that during her employment at Hanzon, (i) she routinely worked hours that required overtime pay under the FLSA and NYLL, (ii) that her pay rate routinely fell below the governing minimum wage due to the large number of hours she worked; and (iii) that she is owed spread of hours pay under the NYLL. She supports these claims with her testimony that (i) she began working for Hanzon in August 2013 and (ii) that she routinely worked between 14 and 24 hours per day, between five and seven days per week, and between 79 and 117 hours per week. Pl. Mem. at 3-4. As a result, Plaintiff claims that she is owed $3,443.01 in unpaid wages because her regular rate of pay fell below the relevant New York State minimum wage; $19,426.06 in unpaid wages due to unpaid overtime wages under the FLSA and the NYLL; and $2,881.50 in unpaid wages due to unpaid spread of hours wages under the NYLL, for a total of $25,750.57 in unpaid wages. *Id.* at 13-14.

---

Morrison's evidence, Plaintiff's wages at all times exceeded that amount.

Plaintiff is incorrect that these issues are undisputed. The evidence Morrison has put in is to the contrary. Morrison's evidence shows that:

- While Plaintiff signed a wage contract with Hanzon in August of 2013, she did not begin to perform work for Hanzon until late November 2013. Def.'s 56.1 Opp. at 2.
- Plaintiff never worked more than five days in a seven-day work week. *Id.* ¶¶ 6, 18-20, 22, 40.
- Between late November 2013 and the end of March of 2014, taking into account breaks for meals and otherwise, Plaintiff worked 40 hours per week. *Id.* ¶¶ 20, 24.
- From April 1, 2014 until her termination, Plaintiff worked 33 or fewer hours per week. *Id.* ¶¶ 27, 28, 45.
- Based on these hours and her daily rate of pay of $130, Plaintiff's regular rate of pay, which was never less than $16.25 per hour, was more than the governing minimum wage, which was never higher than $8.75 per hour. *Id.* ¶¶ 21, 24, 27, 28.
- Because Plaintiff never worked more than 40 hours per week, *id.*, she was not entitled to any overtime pay.
- Plaintiff's compensation was sufficiently high that she was not owed any spread of hours wages under the NYLL. *Id.* ¶ 45.[8]

---

[8] There is an additional disputed issue as to whether the FLSA applied to Plaintiff before January 1, 2015. Morrison contends that for the period of Plaintiff's employment prior to that date, Plaintiff fell within the scope of the companionship exemption of the FLSA, which provided that employees serving as companions to elderly or infirm individuals did not need to be paid the minimum wage or overtime wages. The exemption as applicable to Plaintiff was abolished effective January 1, 2015. However, before that time, Plaintiff fell within the exemption, since she provided companionship services and did not spend any of her time on general household cleaning; the only housekeeping duties Plaintiff performed were incidental to her care of the client. Def. 56.1 Opp. ¶ 11.

Plaintiff argues that because there are no records of the exact hours she worked, her testimony about her recollection of the hours she worked shifts the burden to Morrison to rebut Plaintiff's evidence. Plaintiff then argues that because Morrison supposedly has no personal knowledge of the hours Plaintiff worked, the court should grant summary judgment in Plaintiff's favor. Pl. Mem. at 11. Plaintiff is incorrect.

To begin with, it is questionable whether Plaintiff's testimony makes out a prima facie case for violations of the FLSA and the NYLL. Courts have found that when an employee-plaintiff's claims are internally inconsistent or belie common sense, the employee-plaintiff has failed to establish her prima facie case. *See, e.g., Llolla v. Karen Gardens Apartment Corp.*, 2014 WL 1310311, at *7–8 (E.D.N.Y. Mar. 10, 2014); *report and recommendation adopted as modified to correct typographical errors*, 2014 WL 1311773 (E.D.N.Y. Mar. 28, 2014). Plaintiff's claims in this case have both of these flaws. First, key allegations in the complaint are inconsistent with Plaintiff's current testimony. For example, Plaintiff alleged in the complaint that she worked 24 hours per day every day that she worked (Cplt. ¶¶ 25-26), while she now takes the position that she worked between 14 and 24 hours per day, Pl. Mem. at 3-4. Plaintiff alleged in the complaint that "most" nights during her employment, the client woke her up several times during the night for help using the bathroom (Cplt. ¶ 31), while she now takes the position that, during the early months of her employment, the client "generally slept well" and that it was only later that the client began to have more difficulty sleeping, waking Plaintiff up about three times per week, Pl. Mem. at 3-4. Plaintiff alleged in the complaint that she was required to care for the client "at all times" and was not given any breaks (Cplt. ¶ 30), while she now contends that she was at liberty for an hour per week when the client's daughter took the client on outings and that for some period of time during her employment she was at liberty for

periods of at least 10 hours per week when the client was undergoing dialysis, Pl. Mem. at 4.

In addition, Plaintiff's claim that she worked 24 hours per day on a routine basis without getting any sleep at all is inherently incredible and belies common sense; people cannot function under those conditions for any sustained period of time. Similarly, Plaintiff's assertion – that she worked alternating five- and seven-day work weeks for several months without receiving pay stubs and then switched to five-day work weeks precisely when Hanzon began providing pay stubs – seems suspicious.

But even if Plaintiff has made out a prima facie case, that does not entitle her to summary judgment. When an employee-plaintiff establishes a prima facie case of unpaid wages, the burden shifts to the employer to rebut the plaintiff's evidence. *See Hapanowicz v. Alexandria Tile Co.*, 2014 WL 1311441, at *7 (E.D.N.Y. Mar. 31, 2014) (denying summary judgment for some employee-plaintiffs and citting *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 332 (S.D.N.Y.2005)).

The evidence submitted by Morrison meets this burden. First, there are disputed factual issues on topics about which Morrison unquestionably has personal knowledge. These include the date on which Plaintiff began performing work for Hanzon and the frequency with which Plaintiff accompanied her and the client to dialysis appointments. Plaintiff ignores Morrison's testimony based on her own personal knowledge that Plaintiff did not begin performing work for Hanzon before late November 2013, and that Plaintiff never stayed with the client during her dialysis appointments.

As a result, Plaintiff is not entitled to summary judgment on claims relating to alleged work between August and late November 2013. Nor is she entitled to summary judgment on claims relating to work performed between April 1, 2014, when the client began undergoing

dialysis, and March 1, 2015, after which time Plaintiff acknowledges she did not attend dialysis sessions with the client, because there are disputed issues of material fact based on Morrison's personal knowledge about the number of hours Plaintiff worked per week.

Second, other evidence besides evidence based on Morrison's personal knowledge may properly be used to rebut Plaintiff's testimony. In particular, evidence about the client's daily schedule in the form of affidavits from Donna Simpson, the other aide who cared for the same client during the same time period as Plaintiff, and Patricia Lewis, the aide and who cared for the client during the period immediately after Plaintiff's termination, is significant. *Hussain v. Pakistan Int'l Airlines Corp.*, 2012 WL 5289541 (E.D.N.Y. Oct. 23, 2012), is instructive on this point. In that case, the court refused to grant summary judgment to a plaintiff where the employer-defendant submitted testimony from another employee stating he was able to complete the exact same work responsibilities as the plaintiff in half the amount of time the plaintiff claimed the responsibilities took. *See id* at *2.

The second employee's testimony in *Hussain* is analogous to the affidavit testimony of Ms. Simpson and Ms. Lewis. Their affidavit testimony is sufficient to defeat Plaintiff's summary judgment motion in its entirety. Plaintiff seeks to nullify Ms. Simpson's testimony by arguing that Ms. Simpson had no personal knowledge of how the client acted when Plaintiff was on duty, because they never worked at the same time. (Presumably Plaintiff would make the same argument about Ms. Lewis.) However, Ms. Simpson's and Ms. Lewis' testimony about the client's schedule and behavior when Ms. Simpson and Ms. Lewis were on duty allows one to draw inferences about the client's schedule and behavior when Plaintiff was on duty, since there is no reason why the client would have behaved differently or followed a different schedule when different aides were with her. In *Hussain*, the second employee did not overlap at work

with the plaintiff in that case. The court there held that the question of whether the work performed by the two employees was comparable was an issue of material fact precluding a grant of summary judgment in favor of the plaintiff. *Id.* at *4.

In addition, the aides who worked with the client, including Plaintiff, kept a log of whether the client had eaten and slept well. The log – a business record – has numerous entries from days when Plaintiff was on duty and when Ms. Simpson was on duty showing that the client had slept well. For the portion of the log covering the period when Plaintiff worked with the client, Plaintiff only noted two instance of the client sleeping poorly. Def.'s 56.1 Opp. ¶ 16.

This is a case where there is no conclusive documentary evidence and Plaintiff and Defendant have provided conflicting evidence about the relevant events. Ultimately, the decision about whether Plaintiff is owed unpaid wages will turn on credibility determinations, which means that this case is not an appropriate candidate for a grant of summary judgment.

**II.     Plaintiff Has Not Shown There Is an Absence of a Genuine Issue of Material Fact as to Whether Morrison Was Her Employer.**

For purposes of this motion, Morrison does not dispute that Hanzon was Plainitiff's employer. However, she does dispute that she personally was Plaintiff's employer. While it is true that Morrison hired Plaintiff, set work policies and rules, assigned Plaintiff to perform work for the client, disciplined Plaintiff and terminated Plaintiff, she did so in her capacity as Hanzon's president. Def's 56.1 Opp. ¶¶ 2, 32-38. There is no evidence in the record to support personal liability.

**III.    Plaintiff Has Not Shown There Is an Absence of a Genuine Issue of Material Fact Regarding Whether She Is Entitled to Liquidated Damages.**

Plaintiff argues that she is entitled to $25,750.57 in liquidated damages on top of her actual claimed damages of the same amount. Pl. Mem. at 16. Under the FLSA and the NYLL,

12

an employer is subject to liquidated damages unless it acted with subjective good faith and had an objectively reasonable basis for believing it was complying with the law. Plaintiff argues that it is undisputed that Hanzon did not pay Plaintiffs the wages to which she was legally entitled and that there is no justification for the failure to do so. *Id.* This is incorrect. Morrison has provided evidence that Plaintiff was paid all required wages. Def.'s 56.1 Opp. ¶¶ 20, 21, 24, 27, 28, 45.

Additionally, even if Plaintiff did not receive all required wages, Morrison has provided evidence of her subjective good faith and objectively reasonable basis for believing that Hanzon complied with law: she took several affirmative steps to confirm that Hanzon's pay practices complied with the law. She asked her son, a Hanzon employee, to call the New York State Labor Board to understand the steps Hanzon needed to take to comply with the law; in addition, Hanzon used payroll forms and notices from the New York State Department of Labor's website, submitted to annual audits by the New York State Department of Labor (which entailed a review of Hanzon documents, including bank statements and payroll records), and employed a respected professional payroll company (ADP) to handle the payroll, including providing pay stubs. Def.'s 56.1 Opp. ¶¶ 41-44.

A party's subjective good faith is a question of fact for the factfinder. So is the question of whether an employer undertook objectively reasonable steps to comply with the FLSA. The latter issue depends on several factors, including the size and sophistication of the employer and the employer's efforts to comply with the law. *See, e.g., Franco v. Jubilee First Ave. Corp.*, 2016 WL 4487788, at *16 (S.D.N.Y. Aug. 25, 2016). Morrison has presented evidence that she is unsophisticated and that Hanzon is a small business. Morrison worked alongside Hanzon's employees. Def.'s 56.1 Opp. ¶ 2. The steps she took – in particular by relying on a payroll

company – are similar to those on which the court in *Franco* relied in denying summary judgment against unsophisticated defendants on the issue of liquidated damages. 2016 WL 4487788, at *16 (S.D.N.Y. Aug. 25, 2016); *see also Khereed v. W. 12th St. Rest. Grp. LLC,* 2016 WL 590233, at *6 (S.D.N.Y. Feb. 11, 2016) (denying summary judgment for employee plaintiff on issue of liquidated damages in part because employer had retained a qualified payroll company).

## IV.  Plaintiff Has Not Shown There Is an Absence of a Genuine Issue of Material Fact Relating to Her Claims Under New York Labor Law §§ 198 (b) and (d).

While New York Labor Law §§ 198 (b) and (d) outline penalties for failing to provide adequate notices of employment information and pay statements, both subsections state that it "shall be an affirmative defense that (i) the employer made complete and timely payment of all wages due . . . or (ii) the employer reasonably believed in good faith that it was not required to provide the employee with notice [or statement]."

Plaintiff asserts that the wage notice provided to her at the time of her hiring improperly failed to list her regular and overtime hourly rates of pay. Plaintiff also asserts that her pay stubs improperly failed to list her rate of pay, overtime pay and hours of work. Even if the wage notice and paystubs were deficient, however, there are genuine issues of material fact relating to the statutory affirmative defenses. Morrison has provided evidence that Plaintiff was paid all wages that she was owed in a timely matter. Def.'s 56.1 Opp. ¶¶ 20, 21, 24, 27, 28, 45. Morrison has also put forth evidence that she reasonably believed in good faith that Hanzon was not required to provide the omitted information because Plaintiff had agreed to be paid on a daily and not an hourly basis, because NYS Department of Labor auditors never raised any concerns after reviewing Hanzon's documents and because she believed that the NYS Department of

Labor auditors and the payroll company would have informed her if Hanzon's pay stubs routinely failed to include legally required information. *Id.* ¶¶ 41-44. The reasonableness of this belief is supported by Morrison's numerous attempts to comply with the federal and state labor laws noted above.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment should be denied in its entirety.

Dated: New York, New York
       February 6, 2017

Melsada Morrison, Defendant Pro Se
2349 Ellis Avenue
Bronx, NY 10462

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

ZELMA DUDLEY,

                              Plaintiff,

      -against-                                Civil Action No.: 15-cv-08821

HANZON HOMECARE SERVICES, INC. et al.,

                              Defendants.
-------------------------------------------------------------X

**RECEIVED SDNY DOCKET UNIT 2017 FEB -7 AM 11: 34**

## CERTIFICATE OF SERVICE

I, Melsada Morrison, Defendant Pro Se, hereby certify that on Feb 6, 2017, I caused service of my Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment, my Opposition to Plainitff's Rule 56.1 Statement, and my Declaration in Opposition for Plaintiffs' Motion for Summary Judgment by delivering copies of those documents to the Pro Se Intake Unit for filing and by sending a copy of each document by regular mail to:

Adam Sackowitz
280 Madison Avenue Suite 600
New York, NY 10016

Dated: New York, NY
          Feb 6, 2017

/s Melsada Morrison, Defenant Pro Se